**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN ANTONIO CRUZ,                  :

              **Plaintiff**       :   **CIV. ACTION NO. 3:25-CV-665**

           **v.**                  :        **(JUDGE MANNION)**

ULLI KLEMM, *et al.*,                :

          **Defendants**        :

## MEMORANDUM

Presently before the court in this prisoner civil rights case is defendants' motion to dismiss plaintiff's complaint. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.   BACKGROUND

Plaintiff, John Antonio Cruz, filed this case on April 8, 2025, and the court received and docketed his complaint on April 15, 2025. (Doc. 1). According to the complaint, Cruz is a member of the Jewish faith who follows a Kosher diet. (*Id.* ¶¶8-9). He was committed to the custody of the Pennsylvania Department of Corrections ("DOC") in 2016 and is currently housed in SCI-Benner Township. (*Id.*)

Cruz was scheduled to observe Passover in April 2023 on the DOC's roster of inmates observing the holiday. (*Id.* ¶11). On April 2, 2023, Cruz met with SCI-Benner Township's chaplain, Chaplain Hansard, who purportedly

instructed him that no food for the ceremonial meal would be made available for purchase and that only food from the regular institutional menu would be available. (*Id.* ¶11). The complaint alleges that the food available on the institutional menu is not Kosher and therefore would violate the tenets of Cruz's faith. (*Id.*) Cruz sent a request to Hansard requesting that Kosher food be provided for the observance of Passover. (*Id.*)

On April 13, 2023, Cruz and other members of the Jewish faith met with defendant Ulli Klemm, the DOC's religious services administrator, to discuss recent policy changes regarding meals for religious observances. (*Id.* ¶¶4, 12). Klemm stated that he was aware that the Jewish religion required adherents to eat certain foods during certain holidays, but allegedly stated that he would not arrange for these foods to be made available. (*Id.* ¶13). Klemm purportedly stated that denying Jewish inmates' request for food on certain holidays was necessary because other religious groups would likely request specific meals for specific religious holidays if their request was granted. (*Id.*) Klemm also allegedly told Cruz that his lawyers were "better" than Cruz's lawyers and that Cruz should sue him if he disliked the policy. (*Id.*) The complaint alleges that the DOC's policies concerning religious meals have been changed multiple times since this conversation,

but that none of the changes have provided the meals necessary for Jewish inmates to practice their religious holidays. (*Id.* ¶14).

The complaint alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment. (*Id.* ¶16). Cruz names as defendants Klemm and Laurel Harry, the DOC's secretary. (*Id.* at 1-2). He sues both defendants in both their individual and official capacities. (*Id.*) Cruz seeks an injunction requiring the DOC to provide Jewish inmates religious meals on six specific holidays: Shabbath, Pesach, Shabu'oth, Yom Te'Urah, the evening after Yom Kippur, and Sukkoth. (*Id.* ¶17). He also seeks punitive damages and declaratory relief. (*Id.* ¶¶18-19).

Defendants filed a motion to dismiss the complaint along with a supporting brief on August 19, 2025. (Docs. 15-16). Defendants assert six arguments for dismissal: (1) that all official capacity claims against them should be dismissed on the basis of sovereign immunity; (2) that all official capacity claims for money damages should be dismissed on the basis of qualified immunity; (3) that all individual capacity claims should be dismissed for failure to allege personal involvement; (4) that all individual capacity claims should be dismissed for failure to state a claim upon which relief may be granted; (5) that all claims for monetary damages should be dismissed because Cruz has not alleged any physical injury; and (6) that all individual

3

capacity claims for damages under RLUIPA should be dismissed because RLUIPA does not permit such claims. (Doc. 16). Cruz filed an opposition brief on November 30, 2025, which the court received and docketed on December 10, 2025. (Doc. 19). Defendants have not filed a reply brief. The motion to dismiss is accordingly ripe for judicial review.

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

4

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B.    Constitutional Claims

Cruz's constitutional claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .

5

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

## III.    DISCUSSION

### A.    Official Capacity Claims

Defendants first seek dismissal of all claims brought against them in their official capacity on the basis of sovereign immunity. (Doc. 16 at 4-5). Cruz argues that defendants are not entitled to sovereign immunity to the extent he seeks injunctive relief ordering defendants to cease ongoing violations of his constitutional rights. (Doc. 19 at 6-8). He additionally argues that his suit is allowed because the government has waived sovereign immunity under RLUIPA. (*Id.*)

6

To the extent Cruz seeks damages for his constitutional claims from defendants in their official capacities, these claims are barred by sovereign immunity. DOC employees sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment from claims for damages brought pursuant to Section 1983. *Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 310-11 (3d Cir. 2020).

Defendants are also entitled to sovereign immunity to the extent Cruz seeks damages for violation of RLUIPA. States retain their sovereign immunity from claims for damages under RLUIPA. *Sossaman v. Texas*, 563 U.S. 277, 293 (2011). The official capacity and RLUIPA damages claims will accordingly be dismissed.

Cruz's claims for injunctive and declaratory relief, however, are not barred by sovereign immunity. "[T]he *Ex Parte Young* doctrine allows suits … for declaratory or injunctive relief against state officers in their official capacities." *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (citing *Ex Parte Young*, 209 U.S. 123 159-61 (1908)).

## B.    Official Capacity Damages Claims

Defendants also argue that they are entitled to qualified immunity from Cruz's official capacity damages claims. This argument is meritless. "[T]he doctrine of qualified immunity shields officials acting only in their individual

capacities" and does not apply to official capacity claims.[1] *W.B. Matula*, 67 F.3d 484, 499 (3d Cir. 1995) (citing *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985)), *abrogated in nonrelevant part by A.W. v. Jersey City Public Schs.*, 486 F.3d 791, 795-99 (3d Cir. 2007).[2]

## C.    Individual Capacity Claims – Personal Involvement

Defendants next seek dismissal of Cruz's individual capacity claims for failure to allege personal involvement. (Doc. 16 at 6-8). A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

---

[1] As noted above, defendants are entitled to sovereign immunity from the official capacity damages claims.

[2] Although defendants' argument might be charitably read as asserting qualified immunity with respect to Cruz's individual capacity claims if the invocation of the official capacity claims is viewed as a typographical error, the court will not grant defendants this liberal construction in light of Cruz's status as a pro se litigant. An argument that defendants are entitled to qualified immunity from official capacity claims simply does not give a pro se litigant sufficient notice that qualified immunity with respect to individual capacity claims may also be at issue.

Personal involvement may also be pleaded through allegations that a supervisory defendant "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). To state such a claim, a plaintiff must allege the existence of a policy or practice and allege that: "(1) the existing policy or practice created an unreasonable risk of . . . injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In this case, Cruz alleges that defendants have promulgated and enforced various religious meals policies that have disallowed the religious meals necessary for him to practice his Jewish faith. (Doc. 1). The court finds this sufficient to allege personal involvement. *See Santiago*, 629 F.3d at 129 n.5; *Beers-Capitol*, 256 F.3d at 134. Although the allegations against defendant Harry in this respect are sparse, Cruz alleges that as the secretary of the DOC, Harry "is charged with the final word in the policy making process" and "approved the policy concerning the religious food items

necessary for the ceremonial and ritual observance of the Plaintiff's Hebrew religion." (Doc. 1 at 2). Liberally construed, this is sufficient to allege Harry's personal involvement in the alleged civil rights violations.

## D.    Individual Capacity Claims – Merits

Defendants also seek dismissal of Cruz's individual capacity claims for failure to state a claim upon which relief may be granted. (Doc. 16 at 8-10).

Cruz's claims are grounded in the First Amendment and RLUIPA. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. It offers protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). Only beliefs which are both sincerely held and religious in nature

10

are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the *Turner* test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart*, 227 F.3d at 51. Specifically, *Turner* instructs courts to weigh the following four factors in determining the reasonableness of a challenged prison regulation: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's right at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89-91; *O'Lone*, 482 U.S. at 350-52.

The most important prong of the *Turner* analysis requires a rational connection between the policy and the legitimate governmental interest that justifies it. *Nasir v. Morgan*, 350 F.3d 366, 372 (3d Cir. 2003). "According to *Turner*, a regulation will be sustained unless, 'the logical connection between

11

the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" *Id.* (citing *Turner*, 482 U.S. at 89-90).

RLUIPA provides additional protection for the religious rights of incarcerated individuals beyond that provided by the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015). Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc-1(a). "A plaintiff bears the initial burden of proving that a prison policy 'implicates his religious exercise.'" *Ramirez v. Collier*, 595 U.S. 411, 425 (2022) (quoting *Holt*, 574 U.S. at 360). If the plaintiff makes such a showing, "the burden flips and the government must 'demonstrate that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental interest." *Id.* (quoting 42 U.S.C. §2000cc-1(a)).

In this case, the court finds Cruz's allegations that defendants have promulgated religious meals policies that directly bar him from obtaining the meals necessary to practice his religion sufficient to allege violations of both

12

the First Amendment and RLUIPA. Whether the policies ultimately comply with the First Amendment and RLUIPA are fact questions that cannot be resolved without a developed record. The court will accordingly deny the motion to dismiss the individual capacity claims.

### E.    Damages

Finally, defendants argue that Cruz may not recover damages under the Prison Litigation Reform Act ("PLRA") because he has not alleged a physical injury. (Doc. 16 at 10-11). Although defendants are correct that the PLRA bars compensatory damages in a prisoner civil rights case unless the plaintiff has suffered a physical injury, *see* 42 U.S.C. §1997e(e), Cruz seeks only punitive damages in this case and does not request compensatory damages. (Doc. 1 at 5). Punitive damages are not barred by the PLRA's physical injury rule. *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000).[3]

### F.    Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or ffutile. *Phillips*,

---

[3] Defendants also seek to bar Cruz from recovering damages for his RLUIPA claims. (Doc. 16 at 11). The court need not address this argument because, as noted above, defendants are entitled to sovereign immunity from Cruz's RLUIPA damages claims.

515 F.3d at 245. The court will deny leave to amend as futile because the dismissed claims fail as a matter of law. The case will accordingly proceed to discovery on plaintiff's original complaint.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part defendants' motion to dismiss, dismiss plaintiff's complaint to the extent it seeks damages from defendants in their official capacities or for violation of RLUIPA, require defendants to answer plaintiff's complaint with respect to all other claims, and impose a case management schedule to govern this case. An appropriate order shall issue.

Malachy E. Mannion
United States District Judge

**Dated:** 1/15/26
25-665-01

14